IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JUAN ALVARADO-GONZALEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:19-CV-493-MAB |
| | ) |
| CHRISTOPHER THOMPSON, | ) |
| DUSTIN BOWLES, | ) |
| MAC-SHANE FRANK, | ) |
| ILLINOIS DEPARTMENT OF | ) |
| CORRECTIONS, AMY HILL, | ) |
| CHAD WALL, PHILLIP BAKER, and | ) |
| JOHN HARGIS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion for summary judgment on the issue of exhaustion filed by Defendants Dustin Bowles, Mac-Shane Frank, and Christopher Scott Thompson (Doc. 36). For the reasons explained in this Order, the motion is denied.

### PROCEDURAL BACKGROUND

Plaintiff Juan Alvarado-Gonzales is an inmate in the Illinois Department of Corrections. On May 9, 2019, he filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights at Pinckneyville Correctional Center (Doc. 1). Specifically, Plaintiff alleges that prison officials failed to protect him from being repeatedly sexually assaulted and beaten by his cellmates. Plaintiff's original

Complaint and First Amended Complaint were dismissed for failure to state a claim, and the Court recruited counsel to file a Second Amended Complaint (Doc. 13). The Second Amended Complaint was filed in April 2020 and it contains allegations that pre-date the filing of his original complaint, as well as, allegations that post-date it (*see* Doc. 17). In a nutshell, Plaintiff alleges that Lieutenant Frank intentionally placed him with cellmates that Frank knew posed a danger to Plaintiff (Doc. 17, pp. 4–5). Plaintiff further alleges that Lieutenant Frank and Officer Bowles encouraged Plaintiff's cellmates to abuse him, encouraged staff not to respond or intervene during assaults, and covered up the assaults. Furthermore, on more than one occasion, Officer Bowles and/or Frank issued Plaintiff a bogus disciplinary ticket or sent him to segregation following an assault. Plaintiff alleges that he submitted numerous complaints, letters, and grievances regarding the physical and sexual assaults he endured, but Lieutenant Frank, Internal Affairs, and Warden Thompson mishandled and/or refused to act on them.

Following a threshold review pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on Eighth Amendment claims for failure to protect (Count 1) and deliberate indifference (Count 2) against Warden Christopher Scott Thompson, Internal Affairs Officer Dustin Bowles, and Internal Affairs Supervisor Lieutenant Mac-Shane Frank (Doc. 18). Plaintiff was also permitted to proceed against the IDOC on his claims since he was seeking injunctive relief and alleged that unconstitutional policies attributable to the IDOC were at play (Doc. 18, p. 2 n.1).

Defendants Bowles, Frank, and Thompson filed their motion for summary judgment on the issue of exhaustion on September 14, 2020 (Docs. 36, 37). Plaintiff filed

his response in opposition on December 4, 2020 (Doc. 46). Defendants did not file a reply brief or otherwise address the additional facts asserted by Plaintiff or the evidence he submitted in support thereof. While the briefing was ongoing, Plaintiff filed a motion for leave to amend his complaint to add more Defendants to Counts 1 and 2 (Doc. 45). The Court granted the motion for leave to amend but instructed that the motion for summary judgment on the issue of exhaustion filed by Defendants Bowles, Frank, and Thompson would remain pending in spite of the Third Amended Complaint because Plaintiff's allegations against these Defendants remained substantively the same (Doc. 51).

Having closely reviewed the briefs and evidence submitted by both parties, the Court determined there were no disputed issues of material fact and therefore no hearing was necessary.

## FACTUAL BACKGROUND

Plaintiff is Guatemalan and his first language is Spanish (Doc. 17).[1] Following his conviction on sex-related crimes with victims under the age of 13, he was sentenced to prison and entered the Illinois Department of Corrections on January 4, 2018 (Doc. 10, p. 38).[2] He arrived at Pinckneyville two weeks later on January 18 (*Id.*; Doc. 37-2; Doc. 46-1).

---

[1] The Court previously determined that Plaintiff's "first language is Spanish, and he does not have the ability to communicate effectively to the Court in written English." (Doc. 13, p. 4). A number of documents attached to the First Amended Complaint also indicate that Plaintiff had limited ability to communicate in English (Doc. 10, pp. 46, 58). *See also People v. Alvarado-Gonzalez*, 2021 WL 1856681, (Ill. App. Ct. 2021) (indicating that following Plaintiff's arrest and indictment in July 2018, a Spanish interpreter had to be appointed by the court because Plaintiff "did not speak English.").

[2] *See also People v. Alvarado-Gonzalez*, 2021 WL 1856681, (Ill. App. Ct. 2021).

Defendants submitted grievance records from the Administrative Review Board (Doc. 37-1) and a grievance log from Pinckneyville (Doc. 37-2). Defendants identified the following eight grievances:

1. Grievance dated January 5, 2018;
2. Grievance dated December 12, 2018;
3. Emergency grievance dated August 5, 2019;
4. A duplicate emergency grievance dated August 20, 2019;
5. Emergency grievance dated December 20, 2019;
6. Emergency grievance dated February 12, 2020;
7. Grievance dated February 25, 2020; and
8. Emergency grievance dated March 8, 2020 (Doc. 37).

In his response in opposition to the motion for summary judgment, Plaintiff says he filed at least four other grievances that were not discussed by Defendants (Doc. 46, pp. 2–3). Specifically, he identified the following:

1. Grievance written in mid to late May 2018;
2. Emergency grievance dated June 13, 2018; and
3. Two grievances dated August 1, 2018 (Doc. 46).[3]

The Court will discuss the grievances in chronological order.

The first grievance is one that Defendants claim was dated January 5, 2018. Defendants did not submit a copy of the grievance itself, but rather submitted a computer printout cataloging the grievance, which indicates the grievance was missing from the file (Doc. 37-1, p. 39). The computer printout indicates that the grievance was dated "1/5/18" and it was received by the ARB a year later on January 10, 2019 (*Id.*).

---

[3] In what appears to be a mistake, Plaintiff's brief also indicates that he filed grievances on October 5 and 20, 2019 (Doc. 46, pp. 2–3). However, the portion of the record cited to as evidence of these grievances actually pertains to the August 5 and 20, 2019 grievances (*see* Doc. 46-1, ¶¶ 26, 27 and pp. 13–16).

Plaintiff contends in an affidavit, however, that this grievance was actually dated May 1, 2018, not January 5, 2018, as Defendants say (Doc. 46, p. 2; Doc. 46-1, p. 2; *see id.* at p. 8). In Spanish, which is Plaintiff's first language, dates are written with the day first, followed by the month, which is the opposite of how dates are traditionally written in America.[4] Plaintiff submitted a copy of this grievance, (Doc. 46-1, pp. 8–9), and it appears to be the same grievance discussed in the computer printout from the ARB's records. Specifically, the grievance contains a stamp that says it was received by the ARB on January 10, 2019, which matches the information in the computer printout (*Id.*; Doc. 37-1, p. 39). And the allegations in the grievance submitted by Plaintiff match the description of the grievance on the computer printout (Doc. 46-1, pp. 8–9; Doc. 37-1, p. 39).

In this grievance, Plaintiff reported that he had been physically and sexually assaulted by other inmates and sent to segregation, even though he was the victim (Doc. 46-1, pp. 8–9). He said because of his conviction, prison staff feel he does not deserve the same protection as other inmates (*Id.*). Some staff had even disclosed the nature of his conviction to other inmates and encouraged them to be violent toward him (*Id.*). He said he had reported threats and assaults to staff—the "good people"—but since Pinckneyville does not have a Spanish translator available, they did not understand what he said and his reports were misinterpreted (*Id.*). Plaintiff stated via an affidavit that he submitted this grievance by placing it in the grievance box in the "4 House" (*Id.* at p. 2). He further states that he never received a response to it (*see id.* at pp. 2–7). At some point,

---

[4] *E.g.*, Thomas Moore Devlin, *How to Write the Date in Spanish*, BABBEL MAGAZINE, Sept. 17, 2018, https://www.babbel.com/en/magazine/how-to-write-the-date-in-spanish.

he sent it to the ARB, where it was received on January 10, 2019 (Doc. 37-1, p. 39; *see* Doc. 46-1, pp. 8–9). It appears from the computer printout that the grievance was returned to Plaintiff because he failed to submit the facility's responses (Doc. 37-1, p. 39).

Next, Plaintiff states in his affidavit that he wrote a grievance sometime in mid to late May 2018, when he was in segregation (Doc. 46-1, p. 2). He placed it in the door to his cell and an unknown officer picked it up (*Id.*). Plaintiff claims it was destroyed (*Id*). He does not provide any further details about the grievance or its content (*see id.*). According to Plaintiff, he asked Counselor Amy Hill about the status of this grievance in June 2018, and she said it was still being processed (*Id.*). Defendants did not file a reply brief and therefore did not dispute Plaintiff's assertions regarding this grievance or offer any evidence to rebut them.

On June 13, 2018, Plaintiff filed an emergency grievance, which was documented on the prison's emergency grievance log (Doc. 46-4). Defendants did not produce a copy of this grievance despite the prison's records acknowledging receipt of it, nor did Defendants address it in their brief (*see* Doc. 37).

Plaintiff states in his affidavit that by August 1, 2018, he still had not received responses to his grievances, so he filed two more about the sexual and physical assaults he had experienced (Doc. 46-1, p. 2). They were written in Spanish (*Id.*). Plaintiff did not have copies of these grievances, but he stated in his affidavit that "they involved the same topics" as the grievance he says was dated May 1, 2018 (*Id.*). According to Plaintiff, he inquired about his grievances about two weeks later, on August 13, 2018, and Counselor Hill told him that she had his grievances and he needed to wait for a response (Doc. 46-

1, p. 2). Plaintiff previously submitted a copy of an "Offender Request" slip that corroborates his story (Doc. 10, p. 39). Approximately a month and a half later, Plaintiff still hadn't received responses to his grievances, so he inquired about the status of his grievances again on September 27, 2018 (Doc. 46-1, p. 3). Plaintiff says this time Counselor Hill told him that she did *not* have any pending grievances from him (Doc. 46-1, p. 3). Again, a previously submitted copy of an "Offender Request" slip corroborates Plaintiff's story (Doc. 10, p. 39). Plaintiff says Defendant Bowles then told Plaintiff that he destroyed the grievances (Doc. 46-1, p. 3). Defendants did not file a reply brief and therefore did not dispute Plaintiff's assertions regarding this grievance or offer any evidence to rebut them.

According to Plaintiff, he still had not gotten any responses to his grievances by December 12, 2018, so he filed another one (Doc. 46-1, p. 3; *see* Doc. 37-1, pp. 31–34). In this grievance, Plaintiff recounts that he was sexually abused by two cellmates, beginning in January 2018 (Doc. 37-1, pp. 31–34). He reported physical assaults by his cellmates in mid-May and November 2018 (*Id.*). He complained that Counselor Hill lost or destroyed the grievances he submitted in August 2018 (*Id.*). He said that IA Officers did not protect or help him (*Id.*). He asked for an investigation of the "IA officer" who wrote him a ticket on October 31, 2018 (*Id.*). He said that the Placement Office, IA Office, and warden put him with cellmates who will "fight [him] or rape [him]" (*Id.*). And he said that officials ignore his reports and requests (*Id.*). He indicated in the grievance that he was submitting it directly to the ARB because grievances he submitted at the facility were "put in the garbich [sic]" (*Id.*). The ARB returned the grievance to Plaintiff without addressing it because Plaintiff failed to include the counselor's response to the grievance and the

warden's response (*Id.*).

It is undisputed that Plaintiff filed an emergency grievance dated August 5, 2019 (Doc. 37; Doc. 46; *see* Doc. 37-1, pp. 22–26). In this grievance, Plaintiff asserts that staff at the 4 House at Pinckneyville, the Placement office, and Internal Affairs office failed to protect him. He claims that on August 2nd and 3rd, he reported to the "sargent [sic] and officers" that his cellmate was threatening him and asked to be moved for his own protection. The next day either the sergeant or Lieutenant Baker (it is not clear from the grievance) put Plaintiff's "grievance" in the toilet and told him "today you are men dead [sic]." Plaintiff's cellmate attacked him that same day. Plaintiff hit the panic button repeatedly and was yelling for help, but no one responded. Plaintiff stated in the grievance that officers at Pinckneyville refuse to protect him and the counselor and warden never respond to his grievances. Plaintiff sent this grievance directly to the ARB, where it was received on August 8, 2019. The ARB returned it without addressing it because Plaintiff failed to include responses from his counselor and the warden.

It is undisputed that Plaintiff filed another emergency grievance dated August 20, 2019 (Doc. 37; Doc. 46; *see* Doc. 37-1, pp. 11–21). Prison officials determined it was a "duplicate" of the August 5th grievance, which was received by the warden on August 30, 2019 (*see id.*). The warden deemed the August 5th grievance was an emergency and should be expedited. The grievance officer recommended denying the grievance, and the warden concurred with the recommendation. Plaintiff appealed to the ARB, who denied the grievance.

It is undisputed that Plaintiff filed an emergency grievance on December 20, 2019

(Doc. 37; Doc. 46; *see* Doc. 37-1, pp. 7–10). Plaintiff alleged in this grievance that Lt. Mayer refused to let him use the phone, stating "I know you why [sic] locked up here" and all the other inmates laughed, started talking about his case, and calling him names. He claimed Lt. Mayer was racist and discriminated against him. He further claimed that the IA Office was racist and discriminated against him too. The grievance includes responses from the counselor, grievance officer, and the warden, who ultimately denied the grievance. Plaintiff appealed to the ARB, where his grievance was received on March 9, 2020. Defendants contend that "as of the date [their attorney] received Plaintiff's ARB records"—which is not specified—the ARB had not ruled on the emergency grievance (Doc. 37, p. 4).

It is undisputed that Plaintiff filed an emergency grievance dated February 12, 2020, a non-emergency grievance dated February 25, 2020, and an emergency grievance dated March 8, 2020 (Doc. 37; Doc. 46; *see* Doc. 37-1, pp. 2–3, 5–6, 35–38). It is further undisputed that none of these three grievances had gone through every step of the grievance process by the time the Second Amended Complaint was filed in this case on May 9, 2019.

LEGAL STANDARDS

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party.

*Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). No hearing is necessary when there is no disputed issue of fact.

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). The purpose of the exhaustion requirement is to "alert prison officials to perceived problems and to enable them to take corrective action without first incurring the hassle and expense of litigation." *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) (per curiam) (citations omitted). *See also Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022,

1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

As an inmate in the IDOC, Plaintiff was required to follow the three-step grievance process outlined in the Illinois Administrative Code to exhaust his claims. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). The regulations first require the grievance to first go through the inmate's counselor, then the grievance officer and warden, and then appeal to the Director of the IDOC by sending the grievance to the Administrative Review Board for a final determination. *Id.* at §§ 504.810(a),[5] 504.830(e), 504.850(a), § 504.850(d), (e).

An inmate may also request that a grievance be handled as an emergency by forwarding the grievance directly to the warden. 20 ILL. ADMIN. CODE § 504.840 (2017). If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is handled on an emergency basis, meaning the warden will expedite processing of the grievance and respond to the inmate, indicating what action shall be or has been taken. *Id.* On the other hand, if the warden determines that the grievance should not be handled on an emergency basis, the inmate is notified in writing that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.*

---

[5] There are exceptions to this rule, none of which apply here. 20 ILL. ADMIN. CODE § 504.810(a), 504.870 (2017).

## Discussion

As previously mentioned, Plaintiff filed his original complaint on May 9, 2019 but Plaintiff did not state any viable claims until an attorney was appointed for him and filed a second amended complaint on April 24, 2020. Defendants appear to take the position that Plaintiff had to fully exhaust his administrative remedies as to them by the time he filed his second amended complaint, not the original complaint (*see* Doc. 37). For example, Defendants do not distinguish which allegations were included in the original complaint and which were added somewhere thereafter (*see id.*). And they also discuss grievances that were submitted after the original complaint was filed, as opposed to summarily arguing these grievances cannot serve to exhaust Plaintiff's claims because they were not submitted until after Plaintiff filed suit (*see id.*). Consequently, the Court's analysis will focus on whether Plaintiff fully exhausted his administrative remedies prior to filing his second amended complaint on April 24, 2020.

To begin with, there are a number of grievances that are clearly not fully exhausted. The December 12, 2018 grievance was not exhausted because Plaintiff submitted it directly to the ARB. The last four grievances discussed by the parties—the emergency grievances dated December 20, 2019 and February 2, 2020, the non-emergency grievance dated February 25, 2020, and the emergency grievance dated March 8, 2020—also are not fully exhausted because there is no evidence Plaintiff received a decision from the ARB prior to filing his Second Amended Complaint. Therefore, these grievances cannot serve to exhaust as to Defendants.

However, the same cannot be said for the other grievances. Its important to

reiterate that exhaustion is an affirmative defense, which the *defendants bear the burden of proving*. *Pavey*, 663 F.3d at 903 (citations omitted). In this instance, Defendants were unresponsive to much of Plaintiff's evidence and failed to make the necessary arguments to carry their burden of establishing that he failed to exhaust his administrative remedies as to them.

With respect to the first grievance, which Defendants say was dated January 5, 2018, they contend that it pre-dates Plaintiff's arrival at Pinckneyville and thus cannot possibly pertain to any of their conduct (Doc. 37). However, Plaintiff stated in his affidavit that this grievance was actually dated May 1, 2018. He further stated that he submitted it by placing it in the grievance box in the cellhouse, but he never got a response from prison officials. Defendants did not file a reply brief or otherwise counter Plaintiff's assertions regarding this grievance or respond to them in any fashion. As a result, pursuant to Federal Rule of Civil Procedure 56(e), the Court deems these facts undisputed for the purposes of this Order.

Plaintiff also stated in his affidavit that he submitted a grievance during the latter half of May 2018 and two grievances written in Spanish on August 1, 2018, but he never received responses to any of them. Defendants did not file a reply brief or otherwise counter Plaintiff's assertions in any fashion (*see* Doc. 37). The Court thus deems these facts undisputed for the purposes of this Order pursuant to Federal Rule of Civil Procedure 56(e). Additionally, the prisons own records indicate that Plaintiff submitted an emergency grievance dated June 13, 2018, but Defendants did not provide a copy of this grievance or address it in any fashion (*see* Doc. 37).

In light of Plaintiff's uncontested assertions that he did not receive responses to the January 5/May 1, 2018 grievance, the grievance submitted during the latter half of May 2018, the June 13, 2018 emergency grievance, and the two August 1, 2018 grievances, the Court must conclude that prison officials rendered the grievance process unavailable to Plaintiff by failing to respond to his grievances. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting."). Consequently, these five grievances are deemed exhausted. Furthermore, it is undisputed that the emergency grievances dated August 5 and 20, 2019 were fully exhausted.

The Court must now consider whether any of these seven fully exhausted grievances were sufficient to cover Plaintiff's claims against Defendants Bowles, Frank, and Thompson. Defendants make no argument as to the May 5, 2018 grievance, the grievance submitted during the latter half of May 2018, the June 13, 2018 emergency grievance, and the two August 1, 2018 grievances (*see* Doc. 37). The Court declines to make the Defendants' argument for them. *See Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 860 (7th Cir. 2017) (citing *Vaughn v. King*, 167 F.3d 347, 354 (7th Cir. 1999) ("It is not the responsibility of this court to make arguments for the parties."))). Defendants' failure to acknowledge these grievances is reason, in and of itself, to conclude that they failed to carry their burden of establishing Plaintiff failed to exhaust his administrative remedies. However, the August 5 and 20, 2019 grievances are also plainly sufficient to

cover Defendant Thompson. Plaintiff complained in these grievances about the Internal Affairs office, the Placement office, the staff of 4 House, and the Warden failing to protect him and/or act on his complaints. And Defendant Thompson was the Warden at Pinckneyville during the relevant time period. As for Officer Bowles and Lt. Frank, Defendants made no effort to dispute that Bowles and Frank were part of the Internal Affairs office, the Placement office, or the staff of 4 House (*see* Doc. 37). Consequently, Defendants failed to carry their burden of establishing that these grievances are not sufficient to exhaust as to Officer Bowles and Lt. Frank.

For these reasons, the Court concludes that Defendants Bowles, Frank, and Thompson are not entitled to summary judgment on the issue of exhaustion.

## Conclusion

The motion for summary judgment on the issue of exhaustion filed by Defendants Dustin Bowles, Mac-Shane Frank, and Christopher Scott Thompson (Doc. 36) is **DENIED**. For the time being, discovery on the merits of Plaintiff's claims as to all Defendants remains **STAYED** while the Court waits to see if Defendants Hill, Wall, Baker, and Hargis move for summary judgment on the issue of exhaustion (*see* Doc. 87).

**IT IS SO ORDERED.**

**DATED: July 12, 2021**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**