IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JUAN ALVARADO-GONZALEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:19-CV-493-MAB |
| | ) | |
| CHRISTOPHER THOMPSON, | ) | |
| DUSTIN BOWLES, | ) | |
| MAC-SHANE FRANK, | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS, AMY HILL, | ) | |
| CHAD WALL, PHILLIP BAKER, and | ) | |
| JOHN HARGIS | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion for partial summary judgment filed by Defendants Phillip Baker, Dustin Bowles, Mac-Shane Frank, Amy Hill, John Hargis, Christopher (Scott) Thompson, Chad Wall, and the Illinois Department of Corrections (Doc. 109).

### BACKGROUND

Plaintiff Juan Alvarado-Gonzalez, an inmate of the Illinois Department of Corrections, brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging that prison officials at Pinckneyville Correctional Center violated his constitutional rights. In the third amended complaint, which was filed with the assistance of counsel, Plaintiff asserts Eighth Amendment claims of "failure to protect" and "cruel and unusual

punishment" against all of the Defendants (Doc. 85). His allegations cover four separate instances in which he alleges that Defendants failed to protect him from assaults by other inmates and housed him with other inmates "known for violence" (Doc. 85).

Defendants filed their motion for partial summary judgment on August 24, 2022 (Doc. 109), and Plaintiff filed a response in opposition (Doc. 110). In his response brief, Plaintiff addressed Defendants' statement of material facts and arguments and also included a Statement of Additional Facts (*Id.*). Defendants did not file a reply brief or otherwise address Plaintiff's Statement of Additional Facts. Consequently, those facts are deemed admitted for purposes of summary judgment. FED. R. CIV. P. 56(e).

## FACTS

Defendant Christopher "Scott" Thompson was the Warden of Pinckneyville (Doc. 109-1, p. 17). Defendant Dustin Bowles was an Internal Affairs officer at Pinckneyville (*see* Doc. 110-6; Doc. 109-2). Defendants Phillip Baker, Mac-Shane Frank, John Hargis, and Chad Wall were also correctional officers at Pinckneyville (*see* Doc. 109, Doc. 110). Defendant Amy Hill was a counselor at Pinckneyville and was Plaintiff's counselor for about five or six months, including during the summer and early fall of 2018 (Doc. 109-1, pp. 16).

Plaintiff transferred into Pinckneyville Correctional Center on January 18, 2018 (Doc. 109-1, p. 3; *see also* Doc. 110-1). Plaintiff is 5'2" and weighed about 120–130 pounds; he was sentenced to an aggregate term of 11 years for sex crimes (Doc. 109-1, p. 12). *See also* Illinois Department of Corrections Individual in Custody Search, https://idoc.illinois.gov/offender/inmatesearch.html (search by IDOC number

Y26876); *People v. Alvarado-Gonzalez*, 2021 IL App (1st) 181209-U, ¶ 1, 2021 WL 1856681 (Ill. App. Ct. May 7, 2021).

The following facts, as written, are all undisputed—either admitted by Plaintiff or uncontested by Defendants. Plaintiff testified that he was repeatedly celled with violent criminals with long sentences (Doc. 109-1, p. 4). Specifically, he was placed with cellmates with sentences ranging from 15 years to 100 years who were charged with violent crimes, and who were bigger than him (*Id.* at pp. 12, 17). When Plaintiff asked Defendant Frank why he was not placed with normal, non-violent cellmates, Frank told Plaintiff that he would never be assigned to a cellmate that was white or Hispanic and he would only be placed with cellmates who "can kill" him (*Id.* at p. 10).

Shortly after his arrival at Pinckneyville, Plaintiff was celled with an inmate named Demetrius Moore for about two and a half months (Doc. 109-1, p. 3; *see also* Doc. 110-1). Demetrious Moore is 5 feet, 9 inches tall, weighed over 160 pounds, and was serving a twenty-year sentence for murder and intent to kill or injure (Doc. 110-13). *See also* Illinois Department of Corrections Individual in Custody Search, https://idoc.illinois.gov/offender/inmatesearch.html (search by IDOC number M52256). According to Plaintiff, Moore forced him to masturbate Moore several times while he was seated on a chair (Doc. 109-1, p. 3). Plaintiff claims that Moore threatened to kill him and that the assaults lasted from January 25 to February 25 (*Id.*). According to Plaintiff, he reported Moore's assaults to an official whose name he cannot recall; however, the officer did not help him (*Id.*). Plaintiff also testified that he wrote a note to Defendant Frank, who spoke with Plaintiff in late February 2018 (*Id.* at p. 4). Plaintiff

testified that Frank and Defendant Bowles met with him to take a report of his claims and then ripped it up in front of him (*Id.*). Plaintiff also testified that he was moved out of the cell with Moore about a week after he met with Frank and Bowles, and he was held alone for a short time (*Id.*).

In March 2018, Plaintiff traveled to Cook County for a court writ (Doc. 109-1, p. 3). When Plaintiff returned to the facility, he was placed with an inmate named Douglas Simmons (*Id.* at pp. 3, 4). Simmons is 5 feet, 6 inches tall, weighed over 160 pounds, and is serving time for eight crimes, which carry an aggregate sentence of 36 years (Doc. 110-14). *See also* Illinois Department of Corrections Individual in Custody Search, https://idoc.illinois.gov/offender/inmatesearch.html (search by IDOC number M43031). Plaintiff testified that Simmons forced him to perform sexual acts several times from about April 24 until May 14, 2018 (*Id.* at pp. 4, 5). In particular, Simmons attempted to penetrate him on May 13th, and Plaintiff said that Simmons was able to get "very slightly in" him (*Id.* at p. 5). Plaintiff also testified that Simmons physically attacked him on May 14th (*Id.* at p. 4). According to Plaintiff, while he was housed with Simmons, he transmitted a note to Defendants Frank and Bowles, who again did a report, signed it, and then tore it up (*Id.* at p. 5). Plaintiff also testified that he met with just Defendant Frank on May 1st and that Frank told him that he was a liar and made everything up (*Id.* at pp. 5–6). Plaintiff also met with Defendant Bowles towards the end of May 2018, and Bowles "made a report, and [Plaintiff] signed it, and then it disappeared." (*Id.* at p. 6). On May 14th, Plaintiff was placed in segregation for a month, thus separating him from Simmons (*Id.* at p. 5).

It is undisputed that on June 13, 2018, Plaintiff submitted an emergency grievance, which was documented on the prison's emergency grievance log (Doc. 110-2).[1] Warden Thompson determined that it was not an emergency (*see id.*). It is also undisputed that Plaintiff spoke with Counselor Amy Hill in June, July, and August 2018 about his "problems," including "all of the abuse [he] suffered at the hands of Douglas Simmons and [Daniel] Beasley" (Doc. 109-1, pp. 16, 17). The evidence is conflicted as to who Plaintiff was housed with at the time he spoke to Hill. It is undisputed that he was no longer housed with Simmons (Doc. 109, p. 4; Doc. 110, p. 6; Doc. 109-1, p. 17; Doc. 110-1, p. 3). Plaintiff testified that, at the time he spoke with Hill, he was celled with an inmate named "Marvenl Williams," whom he claimed was "the only good cellmate" that he had (Doc. 109-1, p. 17). However, according to a cell assignment report produced during discovery, Plaintiff was celled with Daniel Beasley in June, July, and August 2018 (Doc. 110-1, p. 3). Plaintiff was not celled with an individual named Marvell Williams until January 2019 (*see id.*).

Defendants did not dispute Plaintiff's story that Counselor Hill told him to write grievances, and to write them in Spanish because she would find someone to translate them (Doc. 109, p. 16). Plaintiff provided Defendant Hill with two written grievances written in Spanish (*Id.*). When Plaintiff asked Defendant Hill about the grievances in August, she acknowledged having them and said that he would receive a response in the

---

[1] Despite the prison's records acknowledging receipt of this grievance, Defendants were unable to produce a copy of it in connection with this briefing or the previous summary judgment briefing regarding exhaustion (*see* Doc. 88, p. 6).

future (*Id.*). But when Plaintiff asked Defendant Hill about the grievances again in September, she responded that she did not have them anymore (*Id.*).

Plaintiff testified via affidavit that on October 29, 2018, his cellmate Daniel Beasley repeatedly punched him in the face and broke his nose (Doc. 46-1, p. 3; *see also* Doc. 109-1, p. 11).[2] Plaintiff was disciplined for fighting with Beasley; the Adjustment Committee report indicates that both "inmates admitted to exchanging closed fist punches" (Doc. 109-2; *see also* Doc. 109-1, p. 11). Plaintiff lost ten days of good conduct credits as part of the discipline (Doc. 109-2). The discipline has not been expunged or reversed, nor has the good time been given back (Doc. 109-1, p. 11; Doc. 109-2).

On December 11, 2018, Warden Thompson sent a notification to Plaintiff informing him that his complaint under the Prison Rape Elimination Act (PREA) was unsubstantiated due to insufficient evidence (Doc. 110-3). On December 12, 2018, Plaintiff filed a grievance with the Administrative Review Board regarding his abuse by Demetrious Moore, Douglas Simmons, and Daniel Beasley and complained that there was a history of his being assigned violent criminals as his cellmates and that Warden Thompson denied his requests for help (Doc. 110-5). The grievance was returned to Plaintiff on December 31, 2018, with a notation by Sarah Johnson that the Warden would be notified of his PREA claims (*Id.*).

---

[2] Daniel Beasley is apparently no longer in IDOC custody because he cannot be located in the IDOC's prisoner database. *See* Illinois Department of Corrections Individual in Custody Search, https://idoc.illinois.gov/offender/inmatesearch.html (search by last name "Beasley" or by inmate number K97637). *See also* Doc. 110-1 (indicating Daniel Beasley's inmate number was K97637).

A mental health record dated December 14, 2018, indicates that Plaintiff told a clinician he had been assaulted three times in prison and was afraid (Doc. 110-6). He asked for help being celled alone or with someone with a case similar to his (*Id.*). The clinician spoke to Officer Bowles in Inmate Affairs and completed an updated PREA predator/vulnerable form and submitted it to Warden Thompson (*Id.*).

Plaintiff testified that in August 2019, his cellmate, Tre Sterling, attacked him (Doc. 109-1, p. 7).[3] According to Plaintiff, at the time of the attack, he and Sterling had been cellmates for about two months (*Id.* at p. 8; *see also* Doc. 110-1, p. 3). Plaintiff said he and Sterling initially got along, however, after Sterling found out about Plaintiff's criminal conviction, he attacked him (Doc. 109-1, p. 8). More specifically, Plaintiff testified that Sterling found out about his conviction on a Thursday, threatened to kill Plaintiff on Friday, and then attacked him on a Sunday (*Id.*). Plaintiff testified that he spoke with Defendant Hargis, Defendant Baker, and Defendant Wall about Sterling's threats and each of them failed to separate Plaintiff and Sterling (*Id.* at pp. 8–9, 15). Plaintiff was separated from Sterling after the attack (*Id.* at p. 8). Plaintiff met with Defendants Frank and Bowles to discuss Sterling about a week after the fight (Doc. 109-1, p. 11).

Plaintiff testified that he never spoke with Warden Thompson but says that he submitted grievances and sent "about a hundred requests" to Thompson (Doc. 109-1, p.

---

[3] Tre Sterling is apparently no longer in IDOC custody because he cannot be located in the IDOC's prisoner database. *See* Illinois Department of Corrections Individual in Custody Search, https://idoc.illinois.gov/offender/inmatesearch.html (search by last name "Sterling" or by inmate number Y34842). *See also* Doc. 110-1 (indicating Tre Sterling's inmate number was Y34842).

17). The documentary evidence shows that Warden Thompson addressed Plaintiff's emergency grievance in June 2018 and sent a memo to Plaintiff in December 2018 regarding his PREA complaint (Doc. 110-2; Doc. 110-3). The documentary evidence also shows that on January 15, 2020, Defendant Scott sent a letter to Plaintiff noting that Plaintiff had been interviewed several times regarding his claims, that his sexual abuse and assault allegations were investigated, and that he had accepted his current housing assignment (Doc. 109-4). Warden Thompson claims that he "does not recall Plaintiff or being asked by Plaintiff for help to prevent assaults or other risks of harm from his cellmates" (Doc. 110-4). Officers Baker, Bowles, Frank, Hargis, and Wall, and Counselor Hill likewise claim the same (Docs. 110-7 through 110-12).

## DISCUSSION

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "Factual disputes are genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented, and they are material only if their resolution might change the suit's outcome under the governing law." *Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) (citation and internal quotation marks omitted). In deciding a motion for summary judgment, the court's role is not to determine the truth of the matter, and the court may not "choose between competing inferences or balance the relative weight of conflicting evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted); *Doe v. R.R. Donnelley*

Page 8 of 25

& Sons Co., 42 F.3d 439, 443 (7th Cir. 1994). Instead, "it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen*, 763 F.3d at 836.

As previously indicated, Plaintiff asserts Eighth Amendment claims of "failure to protect" (Count 1) and "cruel and unusual punishment" (Count 2) against all of the Defendants (Doc. 52). The Court is unsure how these two claims differ from one another. Failure to protect is a particular type of cruel and unusual punishment prohibited by the Eighth Amendment.[4] In other words, a failure to protect claim *is* a claim for cruel and unusual punishment. Both of Plaintiff's claims center on Defendants' actions in celling him with "offenders known for violence" and ignoring his pleas for help (*see* Doc. 52, pp. 13–14, 15–16). While these claims appear to the Court to be duplicative of one another, or at the very least capable of being consolidated into one claim, neither of the parties addressed the issue and so the Court will not take any action at this point to dismiss one of the Counts. The Court simply notes that by all appearance, the "cruel and unusual punishment" claim in Count 2 is based on a failure to protect, and therefore Counts 1 and 2 will be analyzed using the same standards.

## A.  THE IDOC

The Court opts to begin with Defendants' second-to-last argument: the IDOC is not a person who may be sued under § 1983 (Doc. 109, p. 15). Plaintiff conceded that he

---

[4] The Eighth Amendment's cruel and unusual punishment clause gives rise to a number of other claims as well, including deliberate indifference to serious medical needs, excessive force, and conditions of confinement claims.

was unable to discover sufficient facts to establish liability against the IDOC and thus summary judgment is appropriate (Doc. 110, p. 24). Accordingly, the motion is granted as to the IDOC.

**B.** *HECK* **BAR**

Defendants argue that Plaintiff's claims as they pertain to his former cellmate Daniel Beasley are barred by *Heck v. Humphreys* (Doc. 109, p. 5). Plaintiff claims that Defendants failed to separate him from Beasley and that Beasley later attacked him, causing injury. Defendants argue that Plaintiff cannot present evidence to support that theory because it would directly counter findings made by the disciplinary board, and *Heck* bars inmates from proceeding on a civil rights claim if the judgment would imply the invalidity of action taken in a prison disciplinary proceeding (Doc. 109, p. 5).

The Supreme Court held in *Heck* that a state prisoner cannot proceed on civil rights claim under 42 U.S.C. § 1983 if a judgment in his favor would "necessarily imply" the invalidity of his conviction, unless and until that conviction has been set aside. *Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994); *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011); *Gilbert v. Cook*, 512 F.3d 899, 900 (7th Cir. 2008). This doctrine was extended to bar § 1983 claims challenging the outcome of prison disciplinary proceedings. *Edwards v. Balisok,* 520 U.S. 641 (1997); *Gilbert v. Cook*, 512 F.3d 899, 900 (7th Cir. 2008). "[W]hen considering whether *Heck* bars a § 1983 claim, [the court] must consider the *factual basis* of the claim and determine whether it necessarily implies the invalidity of the conviction." *Viramontes v. City of Chicago*, 840 F.3d 423, 428 (7th Cir. 2016) (citation and internal quotation marks omitted). "The plaintiff can only proceed to the extent that the facts underlying the [claim]

are not inconsistent with the essential facts supporting the conviction." *Id.* (citation omitted). In other words, "*Heck* forbids a prisoner in his civil rights case to challenge a finding in his criminal or prison-discipline case that was essential to the decision in that case . . . ." *Moore*, 652 F.3d at 723. But "the prisoner can remain 'agnostic' in his civil rights case about the findings in the criminal (or disciplinary) proceeding; he doesn't have to confess." *Id.*

Here, the Adjustment Committee found Plaintiff guilty of fighting based on a finding that he and Beasley had both thrown punches at each other (*see* Doc. 109-2). While Plaintiff is bound by that finding because his disciplinary conviction has not been overturned, that finding is not necessarily inconsistent with Plaintiff's claim that Defendants failed to protect him from Beasley's attack in the first place. Plaintiff can argue that he needed protection from Beasley and that Beasley attacked him, without contesting that he fought back and punched Beasley. So long as Plaintiff does not contend that he did not throw any punches, then his failure to protect claim does not undermine his conviction on the disciplinary charge, and his claim is not barred by *Heck*. *Contra Foerderer v. Mathias*, 848 Fed. Appx. 667, 668 (7th Cir. 2021) (failure to protect claim barred by *Heck* where prisoner contended that he merely defended himself against inmate's attack, which conflicted with the disciplinary decision finding that prisoner had attacked the other inmate while he slept); *Moore*, 652 F.3d at 724–25 (failure to protect claim barred by *Heck* where a prisoner contended that he was the victim of an officer's unprovoked, gratuitous, and brutal attack, which conflicted with the disciplinary board's ruling crediting the officer's statement that the prisoner was belligerent and

argumentative and had punched one of the officers repeatedly in the face and head before being handcuffed by another officer.)

Accordingly, this aspect of Defendants' motion for summary judgment is denied.

## C. DELIBERATE INDIFFERENCE

"The Eighth Amendment's prohibition on 'cruel and unusual punishments' obligates prison officials to 'take reasonable measures to guarantee the safety of . . . inmates.'" *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). In particular, prison officials are required "to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. This requirement exists because "[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 381 (7th Cir. 2020) (quoting *Farmer*, 511 U.S. at 834).

In order to establish an Eighth Amendment violation based on a failure to protect, an inmate must show that the prison official was deliberately indifferent to "an excessive risk" to their health or safety. *Sinn*, 911 F.3d at 419 (quoting *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015)). Like all deliberate indifference claims, there is both an objective and subjective component. *Gevas*, 798 F.3d at 480. First, the prisoner must show that the harm to which they were exposed was objectively serious. *Id.* Second, the prisoner must show that the prison official knew of and disregarded the excessive risk to the inmate's health or safety. *Balsewicz v. Pawlyk*, 963 F.3d 650, 654 (7th Cir. 2020). This requires "actual, and not merely constructive, knowledge" of the risk of harm, meaning the official "must both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw that inference." *Gevas*, 798 F.3d at 480 (quoting *Farmer*, 511 U.S. at 837). In deciding whether the prison official was aware of the risk, "the circumstances as a whole must be considered." *LaBrec v. Walker*, 948 F.3d 836, 843 (7th Cir. 2020).

### 1. Risk of Harm

Defendants Baker, Hargis, Hill, Thompson, and Wall (but not Bowles or Frank) argue that while Plaintiff tries "to paint his cellmates as known and dangerous risks . . ." he "cannot establish that each of the cellmates he describes were inherently dangerous" (Doc. 109, pp. 9–10). Defendants assert "there is no evidence that each of the inmates housed with Plaintiff amounted to a danger known by [them] equating to an obvious risk." (*Id.*). Defendants imply that none of the cellmates Plaintiff had were known to assault or sexually abuse other inmates, and the assaults on him were "[nothing] more than unfortunate random act[s] of violence in a prison[.]" (*Id.* at p. 11).

Defendants' argument fails to fully account for and credit Plaintiff's story and to construe the evidence in the light most favorable to him. It is undisputed that Plaintiff was relatively small in stature (5'2" and 120–130 pounds)[5] and he was incarcerated for crimes that made him a target for violence and sexual assault.[6] *Farmer v. Brennan*, 511

---

[5] Christopher D. Man & John P. Cronan, *Forecasting Sexual Abuse in Prison: The Prison Subculture of Masculinity As A Backdrop for "Deliberate Indifference"*, 92 J. CRIM. L. & CRIMINOLOGY 127, 167–68 (2002) (explaining research shows that small inmates face a substantial risk of being victims of sexual assault).

[6] Kristine Schanbacher, *An Inside Job: The Role Correctional Officials Play in the Occurrence of Sexual Assault in U.S. Detention Centers*, 9 DEPAUL J. FOR SOC. JUST. 38, 46 (2015) ("[I]nmates with particular offenses make them more likely targets for sexual assault. For example, if a prisoner is serving a sentence for crimes against minors . . . he [or she] faces an increased risk of sexual assault.") (quoting Anthony C. Thompson, *What Happens Behind Locked Doors: The Difficulty of Addressing and Eliminating Rape in Prison,* 35 NEW ENG.

U.S. 825, 843 (1994) (explaining that a prisoner can establish exposure to a sufficiently serious risk of harm "by showing that he belongs to an identifiable group of prisoners who are frequently singled out for violent attack by other inmates"). Defendants also did not dispute Plaintiff's assertions that he was repeatedly celled with inmates who were bigger than him, had been charged with violent crimes, and were serving long sentences.[7] Finally, Plaintiff testified that he was told he would only be placed with cellmates who could kill him. Based on these facts, a reasonable jury could conclude that Plaintiff's cellmates posed an objectively serious risk of harm to him, and this aspect of Defendants' motion for summary judgment is denied.

### 2. Warden Thompson

Defendants argue that Warden Thompson is entitled to summary judgment due to lack of personal involvement (Doc. 109, p. 7). "Individual liability pursuant to § 1983 'requires personal involvement in the alleged constitutional deprivation.'" *Estate of Perry v. Wenzel*, 872 F.3d 439, 459 (7th Cir. 2017) (citation omitted). A supervisor's personal involvement can be established by showed that they "know about the conduct

---

J. ON CRIM. & CIV. CONFINEMENT 19, 125 (2011)); Alice Ristroph, *Sexual Punishments*, 15 COLUM. J. GENDER & L. 139, 159-60 (2006) (explaining that sex offenders are a "distinct and disfavored category within prison populations, subject to heightened abuse from both corrections officers and fellow inmates."); Man, *supra* note 4, at 174–75 (discussing how inmates convicted of sex crimes "are often perceived as the lowest of the low" and are "frequent targets of vicious beatings and rapes under the inmates' collective sense of prison justice. . . . This is especially true of child sex abuse, in which case rape of the child molester is perceived as justified. As a result, inmates convicted of sex crimes against minors often attempt to conceal their reason for incarceration, but once their crime becomes known, the ensuing abuse is notably brutal.")

[7] *See* Man, *supra* note 4, at 167–68, 173–74, 175 (explaining research shows that larger inmates, inmates convicted of serious felonies, and inmates serving long sentences are more likely to assume the role of aggressor)

and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see.'" *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (citation omitted).

Defendants do not clearly articulate what their argument is. They began by briefly discussing what they presumably consider to be illustrative case law (Doc. 109, pp. 7–8). First, *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017), in which the Seventh Circuit held the plaintiff failed to sufficiently allege a claim for supervisory liability against the police chief (Doc. 109, p. 7). Second, *Butera v, Cottey*, 285 F.3d 601, 603, 606, 607 (7th Cir. 2002), in which the Seventh Circuit held that the plaintiff's evidence was insufficient to show the sheriff had knowledge of a specific threat to the plaintiff (Doc. 109, pp. 7, 8). Defendants then asserted, "[t]here is insufficient evidence to tie Warden Thompson to Plaintiff's Eighth Amendment claims[,]" and cited to a string of cases holding that a prison official cannot be held liable based on what they "should have known" (Doc. 109, p. 8). Then Defendants stated, "[h]ere, the evidence shows that Warden Thompson sent correspondence to Plaintiff reiterating his understanding of the facts and that he also notified Plaintiff of the outcome of his PREA complaint, which was unsubstantiated. Plaintiff cannot show that Defendant Thompson was sufficiently involved in order to be liable under § 1983." (Doc. 109, p. 8).

Defendants' "analysis" is ultimately limited to just three sentences that are essentially conclusory statements. There is no meaningful legal assessment of the cases cited as supporting authority. *Gill* does not appear to have any bearing on the instant case because we are far past the pleadings stage; we are at summary judgment and the issue is not whether Plaintiff has sufficiently stated a claim. As for *Butera*, it is not enough for

to simply outline the holding of a case. Defendants must explain how the illustrative case connects to the facts or legal theories in the case at hand. Otherwise, the Court is left to try to piece together the contours of Defendants' argument. And in this instance, the Court is unable to connect the dots and state with any modicum of confidence what argument(s) Defendants are trying to make (*e.g.*, Thompson was unaware of the facts indicating a sufficiently substantial danger existed, or he knew the underlying facts but believed the risk was insubstantial or nonexistent, or he knew of the substantial risk to Plaintiff's health or safety but responded reasonably to that risk).

The undisputed evidence is that Plaintiff sent over one hundred requests to Warden Thompson. Plaintiff also filed at least one emergency grievance and one PREA complaint, which Warden Thompson read and responded to but took no action with respect to the assignment of Plaintiff's cellmates. Based on this evidence, a reasonable juror could find against Warden Thompson. *See Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) ("In failure to protect cases, '[a] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety.'" (quoting *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996))); *Farmer*, 511 U.S. at 844 (explaining trier of fact can infer knowledge from an obvious risk to inmate health or safety). Consequently, summary judgment is denied as to Warden Thompson based on his lack of personal involvement.

To be clear, the Court is not concluding that there is no conceivable basis on which Warden Thompson is entitled to summary judgment. Rather, Defendants simply have not presented a cogent explanation, supported by legal citations, as to why he cannot be

held liable for failure to protect or deliberate indifference. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) ("Neither the district court nor this court are obliged to research and construct legal arguments for parties, especially when they are represented by counsel."); *Tyler v. Runyon*, 70 F.3d 458, 465 (7th Cir. 1995) ("The responsibility for the identification, framing, and argument of the issues . . . is that of the lawyers, not that of the judges. . . . So, if [a party] fails to make a minimally complete and comprehensible argument for each of his claims, he loses regardless of the merits of those claims as they might have appeared on a fuller presentation.").

### 3. Counselor Amy Hill

Defendants argue that Counselor Amy Hill is also entitled to summary judgment due to lack of personal involvement (Doc. 109, p. 8). They say Plaintiff's issue with Amy Hill is that she threw away his grievances, and they argue that even if that is true, it would only matter if Plaintiff had written to Hill while he was in danger (*Id.*). Defendants imply that Plaintiff was not in danger at the time he wrote to Hill because "he testified in his deposition that he only spoke with Hill *after* an incident of harm and while he was in a good situation" being housed with "the only good cellmate" he had (*Id.*).

Summary judgment cannot be granted for Hill because an issue of material fact exists as to who Plaintiff was celled with when he spoke to Hill and authored his grievances. On the one hand, Plaintiff testified that he was celled with Marvell Williams, who was a "good cellmate," at the time he spoke to Amy Hill (Doc. 109-1, p. 17). Elsewhere, however, Plaintiff's testimony suggests that he was living with Daniel Beasley at the time he spoke to Amy Hill and was afraid of him. Specifically, Plaintiff testified

that he "wrote in detail about all of the abuse [he] suffered at the hands of . . . Beasley" in his grievances, and if Hill "would have had the grievances translated" then Plaintiff would not have subsequently "had [his] nose broken" by Beasley in October 2018 (Doc. 109-1, p. 16). Furthermore, the cell assignment history indicates that Plaintiff was celled with Beasley during the timeframe that he says he spoke to Amy Hill (Doc. 110-1, p. 3). *See also* Doc. 110-5 (grievance to the ARB indicating that he wrote two grievances to Counselor Hill "about PREA and my celie try kill me [sic]").

This issue of fact is material because it speaks to whether Plaintiff was in any danger at the time he spoke to Hill, and the resolution of this issue of fact could determine the outcome of Plaintiff's claim. The Court cannot decide on summary judgment which story is true and who Plaintiff was celled with. *Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 798 (7th Cir. 2018) ("[A] court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts on summary judgment, and must avoid the temptation to decide which party's version of the facts is more likely true.") (citations and internal quotation marks and alterations omitted). Consequently, summary judgment for Amy Hill must be denied.

### 4. State of Mind

Defendants argue that Plaintiff cannot show they exhibited deliberate indifference to his safety based upon the information he presented or that they otherwise knew with respect to Demetrius Moore, Douglas Simmons, or Tre Sterling (Doc. 109, p. 11). Specifically, Defendants claim that Plaintiff only talked to Officers Frank and Bowles about his issues with Demetrius Moore and Douglas Simmons (*Id.* at p. 13). Because

Plaintiff did not warn Defendants Baker, Hargis, Hill, Thompson, and Wall about issues with Moore or Simmons, they argue that they cannot be held liable for deliberate indifference as it pertains to those two inmates (*Id.*). Likewise, Defendants Bowles and Frank argue that because Plaintiff did not tell them about any issues with Tre Sterling, they cannot be held liable for deliberate indifference as it pertains to Sterling (*Id.*). They argue that "[f]or these reasons . . . summary judgment is appropriate for the Defendants on most of Plaintiff's allegations." (*Id.*).

Defendants' argument implicates the manner in which Plaintiff stated his claims in his complaint. Plaintiff did not state a separate claim against each Defendant, nor did he state a separate claim as to each incident/cellmate (*see* Doc. 52). Rather, Plaintiff alleged one consolidated claim of failure to protect (Count 1) and one consolidated claim of cruel and unusual punishment (Count 2) against all seven individual Defendants, and he indicated that each Defendant was liable based on their specific actions (or inactions) as described in the complaint (*see* Doc. 52, pp. 13–16). Importantly, Plaintiff did not allege that all seven individual Defendants were liable for failure to protect and deliberate indifference with respect to each and every one of his four cellmates who attacked him. In other words, Plaintiff's claims are not that "everybody is liable for everything," which is what Defendants seemingly suggest. Plaintiff confirmed as much in his response to the motion for summary judgment. He reiterated that his claims against Defendants Baker, Hargis, and Wall relate exclusively to the Tre Sterling assault (Doc. 110, p. 17); his claims against Counselor Hill relate exclusively to the Daniel Beasley assault (*Id.*); and his claims against Warden Thompson and Officers Frank and Bowles relate to all four of the

cellmates who assaulted him (*Id.* at pp. 18–21).

Against this backdrop, the Court thinks Defendants' argument reflects a misunderstanding about the nature of Plaintiff's claims and fails to establish any basis for awarding summary judgment.

## D.  QUALIFIED IMMUNITY

At this point, all of the individual Defendants remain on the hook for Plaintiff's claims of failure to protect and cruel and unusual punishment, so the Court must consider Defendants' argument that they are protected by qualified immunity (Doc. 109, pp. 13–16). The defense of qualified immunity generally "protects government agents from liability when their actions do not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 914 (7th Cir. 2011) (citing *Purvis v. Oest*, 614 F.3d 713, 720 (7th Cir. 2010)). "It protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)). While qualified immunity is an affirmative defense, once raised, the burden shifts to the plaintiff to defeat it. *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019) (citing *Purvis*, 614 F.3d at 717), *cert. denied*, 206 L. Ed. 2d 856 (2020). To defeat a defense of qualified immunity, the plaintiff must show that the facts demonstrate "a violation of a constitutional right," and that the "constitutional right was clearly established at the time of the alleged violation." *Leiser*, 933 F.3d at 701 (quoting *Gill v. City of Milwaukee*, 850 F.3d 335, 340 (7th Cir. 2017)).

"[A] right is 'clearly established' when it is 'sufficiently clear that every reasonable

official would have understood that what he is doing violates that right.'" *Lovett v. Herbert*, 907 F.3d 986, 992 (7th Cir. 2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Plaintiff can meet his burden on this prong in one of two ways. *Lovett*, 907 F.3d at 992. First, Plaintiff can show that the Supreme Court or the Seventh Circuit has "previously held that conduct analogous to the defendant officer's actions constitutes a violation of the right at issue." *Lovett*, 907 F.3d at 992; *accord Leiser*, 933 F.3d at 702. This does not mean that Plaintiff "must be able to point to a case 'on all fours'" with the facts of his own case. *Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2017). But he does "need to show some settled authority that would have shown a reasonable officer in [Defendant's] position that his alleged actions violated the Constitution." *Leiser*, 933 F.3d at 702 (citations omitted). Or, if there is no existing precedent that puts the unlawfulness of the conduct beyond debate, Plaintiff can show this is "one of the rare cases" when the defendant's conduct "is so egregious that it is an obvious violation of a constitutional right." *Leiser*, 933 F.3d at 702.

Either way, the inquiry into whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Lovett*, 907 F.3d at 992 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). This requires us to consider "whether the violative nature of *particular* conduct is clearly established." *Leiser*, 933 F.3d at 702 (quoting *Mullenix*, 577 U.S. at 12). Courts have been cautioned not to define the right too broadly "at a high level of generality," because "the entire second prong of qualified immunity analysis will be subsumed by the first and immunity will be available rarely, if ever." *Thompson v. Cope*, 900 F.3d 414, 421 (7th Cir. 2018) (citing *Ashcroft v. al-*

*Kidd*, 563 U.S. 731, 742 (2011) and *Golodner v. Berliner*, 770 F.3d 196, 206 (2d Cir. 2014)). But courts have also been cautioned not to define the right too narrowly "based on the exact factual scenario presented" because then the government actor "will invariably receive qualified immunity." *Thompson*, 900 F.3d at 421 (citing *Golodner*, 770 F.3d at 206)).

Here, Defendants did not explicitly define the right allegedly violated and their argument is not actually about whether the rights at issue were clearly established (*see* Doc. 109, pp. 14–15). Rather, they merely argue that Plaintiff's evidence is not sufficient to establish deliberate indifference—an argument the Court has already rejected. Furthermore, that prison officials "have the duty to protect a prisoner once they become aware he is in danger of assault by another prisoner . . . is a now well-settled aspect of Eighth Amendment jurisprudence." *Gevas v. McLaughlin*, 798 F.3d 475, 484 (7th Cir. 2015).

Defendants have given the Court no reason to think Plaintiff's rights at issue in this case were not clearly established, and this aspect of their motion for summary judgment is denied.

## E.  EQUITABLE RELIEF

For relief, Plaintiff seeks, in part, injunctive and declaratory relief (Doc. 52, pp. 15, 16). According to Defendants, he seeks "injunctive and declaratory relief . . . to prevent the continued violation of his constitutional rights," which they claim is too vague (Doc. 109, p. 16). Defendants, however, overlooked the final paragraph of the complaint, in which Plaintiff asks for "an order of injunctive relief to prevent further retaliation and order that Plaintiff be assigned to a low-risk cellmate" (Doc. 52, p. 16).

"Permanent injunctive relief is appropriate if the applicant demonstrates '(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Liebhart v. SPX Corp.*, 998 F.3d 772, 779 (7th Cir. 2021) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Defendants argue that Plaintiff cannot satisfy the third and fourth factors regarding balance of hardships and public interest (Doc. 109, p. 16–17). Specifically, Defendants argue that the injunctive relief Plaintiff seeks is contrary to public policy because an order directing how cell assignments should be made requires the court to intervene in the day-to-day operations and speak on a topic that courts are "[not] necessarily equipped to review" (*Id.*). In support of their argument, they rely solely on an unpublished case out of the Central District of Illinois: *Aguado v. Godinez*, Case No. 13-3378-SEM (C.D. Ill. June 26, 2015) (Doc. 109-3). The Court is not prepared to hold based on such thin authority that it is never appropriate for a court to issue an order providing any type of parameters for cell placement. *See Van Straaten v. Shell Oil Prod. Co. LLC*, 678 F.3d 486, 490 (7th Cir. 2012) ("[D]ecisions of district courts are not authoritative even within the rendering district. They cannot 'settle' any proposition."). *See also Turley v. Lashbrook*, No. 08-07-SCW, 2018 WL 7585236, at *8 (S.D. Ill. Sept. 26, 2018) (permanently enjoining the Warden at Menard Correctional Center from housing a particular inmate in the North I cell house in a single cell with a one or more other inmates or cellmates).

Defendants next cite case law reflecting that Plaintiff "must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so . . . during the remainder of the litigation and into the future." (Doc. 109, p. 17). They make the conclusory, unadorned argument that, "[a]lthough there are questions of fact as to some of his claims, Plaintiff cannot meet the burden required of him" (*Id.*). A perfunctory argument such as this is simply not enough to warrant summary judgment. *See United States v. Useni,* 516 F.3d 634, 658 (7th Cir. 2008) ("We have repeatedly warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

Defendants have failed to show as a matter of law that Plaintiff should be foreclosed from seeking injunctive relief. This aspect of their motion for summary judgment is denied.

## CONCLUSION

The motion for summary judgment filed by Defendants Phillip Baker, Dustin Bowles, Mac-Shane Frank, Amy Hill, John Hargis, Christopher (Scott) Thompson, Chad Wall, and the Illinois Department of Corrections (Doc. 109) is **GRANTED in part and DENIED in part.** It is **GRANTED** as to the IDOC and the IDOC is **DISMISSED with prejudice** as a Defendant in this lawsuit. The motion is denied in all other respects.

This matter will proceed to trial on Plaintiff's failure to protect claim (Count 1) and cruel and unusual punishment claim (Count 2) against Defendants Phillip Baker, Dustin

Bowles, Mac-Shane Frank, Amy Hill, John Hargis, Christopher (Scott) Thompson, and Chad Wall.

A status conference to discuss the trial schedule and the utility of a settlement conference will be set by a separate Order.

**IT IS SO ORDERED.**

**DATED: March 31, 2023**

**s/ Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**